UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| JASON ANDERSON, | § | |
| Reg. No. 30783-044, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | EP-11-CV-69-PRM |
| | § | |
| M. TRAVIS BRAGG, Warden, | § | |
| Respondent. | § | |

## MEMORANDUM OPINION AND ORDER

Petitioner Jason Anderson ("Anderson"), a federal prisoner[1] currently incarcerated at the La Tuna Federal Correctional Institution in Anthony, Texas,[2] challenges a prison disciplinary action initiated against him for gambling which resulted in the loss of thirty-four days of vested good conduct time. In a *pro se* petition for habeas corpus under 28 U.S.C. § 2241 [ECF No. 1], Anderson alleges that Bureau of Prison ("BOP") staff members violated his constitutional rights when they (1) failed to provide him with a copy of a written incident report within twenty-four hours after they became aware of his alleged infractions, (2) failed to give him *Miranda*[3] warnings before they interviewed him, and (3) amended the incident report thirty minutes before his disciplinary hearing. Anderson asks the Court to expunge the disciplinary report from his record and restore the lost good conduct time. In a motion to dismiss pursuant to Federal Rule of

---

[1] *See United States v. Anderson*, 4:04-cr-00505-CEJ-1 (E.D. Mo. Mar. 13, 2005). Anderson pleaded guilty, pursuant to a plea agreement, to conspiracy to distribute and possession with the intent to distribute marijuana and cocaine. The trial court accepted his pleas and sentenced him to an aggregate term of 121 months' imprisonment. His current projected good conduct time release date is February 9, 2014.

[2] Anthony is located in El Paso County, Texas, which is within the territorial confines of the Western District of Texas. 28 U.S.C.A. § 124(d)(3) (West 2011).

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

Civil Procedure 12(b)(6) [ECF No. 5], Respondent Warden M. Travis Bragg ("Bragg") asserts "that with all facts asserted by [Anderson] taken as true, he cannot, as a matter of law, state a claim against this Respondent."[4] After reviewing the record, and for the reasons discussed below, the Court concludes that it should deny Anderson's petition and dismiss his cause.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 31, 2009, a correctional officer at the Federal Correctional Institution in Milan, Michigan, observed Anderson sitting at a table in the law library exchanging stacks of postage stamps with other inmates. Several months later, Anderson admitted to an investigator that he had run a gambling pool. Anderson also admitted that his mother had sent money to multiple inmate trust accounts to cover house bets when the staff confiscated his stamps. When the prison staff checked financial records, they determined that Anderson's mother had transferred $850 by Western Union to seven inmate trust accounts. When prison staff searched Anderson's property, they discovered 6,200 postage stamps of various denominations concealed inside a laundry soap box and hidden within legal paperwork.

On February 11, 2010, Anderson received a copy of an incident report charging him with three offenses: (1) aiding in giving money to another individual for a prohibited purpose, in violation of BOP disciplinary code 217(A); (2) preparing or conducting a gambling pool, in violation of BOP disciplinary code 325; and (3) engaging in conduct which disrupted the security of the institution, in violation of BOP disciplinary code 299, most like aiding in the demanding or receiving of money or anything of value to avoid bodily harm, in violation of BOP disciplinary

---

[4] Resp't's Mot. to Dismiss 4.

code 204(A).[5] On February 14, 2010, Anderson claimed, in a written statement, "that the reporting officer . . . falsified the [incident report] . . . . As the photos clearly indicate, nothing of any gambling paraphernalia was found in my property. . . . The [incident report also] fails to mention that on October 31, 2009, while in the library, I was searched . . . and found to have nothing in my possession."[6]

On February 16, 2010, the Unit Discipline Committee ("UDC") reviewed Anderson's statement and referred the case to a Discipline Hearing Officer ("DHO") "based on the seriousness of the charges."[7] Anderson also acknowledged that he received a copy of his rights at a discipline hearing:

> As an inmate charged with a violation of Bureau of Prisons rules or regulations referred to the Discipline Hearing Officer (DHO) for disposition, you have the following rights:
> 1. The right to have a written copy of the charge(s) against you at least 24 hours prior to appearing before the Discipline Hearing Officer;
> 2. The right to have a full-time member of the staff who is reasonably available to represent you before the Discipline Hearing Officer;
> 3. The right to call witnesses (or present written statements of unavailable witnesses) and to present documentary evidence in your behalf, provided institutional safety would not be jeopardized;
> 4. The right to present a statement or to remain silent. Your silence may be used to draw an adverse inference against you. However, your silence alone may not be used to support a finding that you committed a prohibited act;
> 5. The right to be present throughout the discipline hearing except during a period of deliberation or when institutional safety would be jeopardized. If you elect not to appear before the DHO, you may still have witnesses and a staff representative appear on your behalf;
> 6. The right to be advised of the DHO's decision, the facts supporting

---

[5] *Id.* Ex. B (Incident Report), at 1; Pet'r's Pet. Ex. A (Amended Incident Report), at 1.

[6] Resp't's Mot. to Dismiss Ex. B (Statement of Jason M. Anderson), at 5.

[7] *Id.* Ex. B (Incident Report Part II–Committee Action), at 3.

> that decision, except where institutional safety would be jeopardized, and the DHO's disposition in writing; and,
> 7. The right to appeal the decision of the DHO by means of the Administrative Remedy Procedure to the Regional Director within 20 calendar days of notice of the DHO's decision and disposition.[8]

On March 10, 2010, Anderson appeared before the DHO with a staff representative to assist him at his disciplinary hearing. Anderson denied the charges and presented two witnesses.[9] The first witness claimed that the investigator "mixed our statements up," and he asserted that he "was the one conducting a gambling pool."[10]

After reviewing the evidence, the DHO found Anderson guilty of aiding in giving money to another individual for a prohibited purpose, in violation of BOP disciplinary code 217(A), and preparing or conducting a gambling pool, in violation of BOP disciplinary code 325. The DHO also found Anderson not guilty of engaging in conduct which disrupted the security of the institution, in violation of BOP disciplinary code 299, most like aiding in the demanding or receiving of money or anything of value to avoid bodily harm, in violation of BOP disciplinary code 204(A). In a written report, the DHO described the specific evidence that she relied upon in reaching these findings.

> 1) The DHO considered the timeframes [sic] that delayed the DHO hearing as the Incident Report was rewritten to support the elements of . . . Codes 204(A) and 217(A). The inmate was asked . . . if the delay hindered his ability to prepare a defense and he stated, "No." . . . You stated to the DHO, "you believe the Charge 204(A) is not supported." The DHO considered the evidence and your statement; therefore, the Code 204(A) is being removed

---

[8] *Id.* Ex. B (Inmate Rights at Discipline Hearing), at 9.

[9] *Id.* Ex. C (Discipline Hearing Officer Report), at 1; Pet'r's Pet. Ex. B (Amended Discipline Hearing Officer Report), at 1.

[10] Resp't's Mot. to Dismiss Ex. C, at 2; Pet'r's Pet. Ex. B, at 1–2.

-4-

as evidence does not support the charge.

. . . .

3) The DHO considered your statement during the [hearing] stating, "Regarding code 217(A), the [investigator] failed to put in the whole code in the incident; [t]he code does not meet this incident report. . . . Regarding code 325, there is nothing found where I was preparing or conducting a gambling pool. I was released back on to the compound . . . . If I was found preparing or conducting a gambling pool, why didn't they write me up then? I was never caught with any gambling paraphernalia.["] . . .
The DHO considered your statement during your interview, stating "you had your mother . . . send money to various inmates to cover the house bet. Staff checked this information and discovered your mother sent . . . inmate[s] money via Western Union. . . . At least one of the . . . inmates [was] present on 10-31-2009, in the law library when staff found you conducting the gambling pool."[11]

As punishment, the DHO disallowed thirty-four days of vested good conduct time, imposed forty-five days of disciplinary segregation, and took away telephone and visiting privileges for ninety days. The DHO also recommended a disciplinary transfer.

In his petition, Anderson raises three grounds for relief.[12] First, Anderson asserts that "Bureau of Prisons . . . Program Statement 5270.08 . . . provides . . . that staff must give notice of the charge by delivering an incident report to the inmate within 24 hours of staff becoming aware of an inmate's involvement in an incident."[13] Anderson claims that prison staff delivered the incident report to him "at least thirty-three days after they became aware of the incident. This is a clear violation of the Equal Protection Clause because the BOP provides . . . protection under the 24-hour time limitation to all other inmates, thus Petitioner is being treated differently from

---

[11] Resp't's Mot. to Dismiss Ex. C, at 4; Pet'r's Pet. Ex. B, at 3–4.

[12] Mindful of Anderson's *pro se* status, the Court has read his complaint liberally. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (explaining a *pro se* pleading is held to less stringent standards than more formal pleadings drafted by lawyers).

[13] Pet'r's Pet. 5.

others similarly situated."[14] Moreover, the delay violated his "protections under the Due Process Clause."[15] Second, he maintains that the investigator never advised him of his Fifth Amendment protections. As a result, he "gave incriminating admissions during an interview."[16] Finally, Anderson claims that he received an amended incident report "just thirty minutes prior to the DHO hearing."[17] This violated his "protections under the Equal Protection and Due Process Clauses" because "the incident report is to be delivered to the inmate a minimum of at least 24 hours prior to the hearing."[18]

## LEGAL STANDARD

A prisoner's challenge to a disciplinary action may fall within the scope of § 2241.[19] Relief is not available, however, unless the petitioner shows that prison authorities deprived him of some right secured by the Constitution or laws of the United States.[20] Moreover, "the Due

---

[14] *Id.*

[15] *Id.* at 6.

[16] *Id.*

[17] *Id.* at 7.

[18] *Id.* at 7–8.

[19] See *United States v. Cleto*, 956 F.2d 83, 84 (5th Cir.1992) ("Cleto's claim should have been filed as a petition for writ of habeas corpus under 28 U.S.C. § 2241, as he challenges the execution of his sentence rather than the validity of his conviction and sentence."); *Carmona v. U.S Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001) ("[A]ppellant's petition to expunge the Bureau's disciplinary sanctions from his record, including the loss of good time credits, as a challenge to the execution of his sentence rather than the underlying conviction, is properly brought via an application for a writ under § 2241.").

[20] See *Brecht v. Abrahamson*, 507 U.S. 619, 633–34 (1993) (explaining that "the writ of habeas corpus has historically been regarded as an extraordinary remedy, a bulwark against convictions that violate fundamental fairness."); *Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995); *Hilliard v. Bd. of Pardons & Paroles*, 759 F.2d 1190, 1192 (5th Cir. 1985).

Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner."[21] A recognized liberty or property interest must be at stake before a due process claim is cognizable.[22] Accordingly, a petitioner is not entitled to due process protections in a prison disciplinary hearing unless he is subjected to sanctions which "impose[ ] atypical and significant hardships on the inmate in relation to the ordinary incidents of prison life."[23]

A federal prisoner has a liberty interest in his accumulated good-time credit.[24] Thus, the "revocation of such credit must comply with minimal procedural requirements."[25] However, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply."[26] At a minimum, the prisoner is entitled to (1) advance written notice of the disciplinary charges; (2) an opportunity to present evidence in his defense; and (3) a written statement by the factfinder regarding the evidence relied on and reasons for the disciplinary action.[27] Additionally, there must be "some evidence" which supports the disciplinary decision.[28] Furthermore, a court's determination "whether this

---

[21] *Sandin v. Conner*, 515 U.S. 472, 478 (1995).

[22] *Bd. of Regents v. Roth*, 408 U.S. 564, 569–70 (1972).

[23] *Sandin*, 515 U.S. at 484.

[24] *Henson v. U.S. Bureau of Prisons*, 213 F.3d 897, 898 (5th Cir. 2000).

[25] *Id.*

[26] *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).

[27] *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985) (citing *Wolff*, 418 U.S. 563-67).

[28] *Id.*

standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence."[29]

"A motion to dismiss for failure to state a claim [pursuant to Federal Rule of Civil Procedure 12(b)(6)] is an inappropriate practice in habeas."[30] A motion for summary judgment under Federal Rule of Civil Procedure 56, however, is permissible in federal habeas corpus cases.[31] Accordingly, the Court will construe Bragg's pleading as a motion for summary judgment.

Summary judgment is authorized "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[32] A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."[33] The movant may discharge this burden by pointing out the absence of evidence to support one or more essential elements of the non-moving party's claim "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."[34] If the moving party

---

[29] *Id.* at 455; *see also Smith v. Rabalais*, 659 F. 2d 539, 545 (5th Cir. 1981) ("[T]he court may act only where arbitrary or capricious action is shown . . . . This means the prison disciplinary proceedings will be overturned only where there is no evidence whatsoever to support the decision of prison officials.").

[30] *Miramontes v. Driver*, 243 F. App'x 855, 856 (5th Cir. 2007) (per curiam) (unpublished) (citing *Browder v. Director, Dep't of Corr. of Ill.*, 434 U.S. 257, 269 n.14 (1978)).

[31] *Clark v. Johnson*, 202 F.3d 760, 764–65 (5th Cir. 2000) (citations omitted).

[32] FED. R. CIV. P. 56(a).

[33] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

[34] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986).

meets this burden, the nonmovant must show that specific facts exist over which there is a genuine issue for trial.[35]

## ANALYSIS

    *A.*    *Notice of the Incident*

Anderson first notes that the BOP staff failed to give him notice of the disciplinary code violations within twenty-four hours after they first became aware of his misconduct, as required by BOP Program Statement 5270.08.[36] The incident report at issue does show that the prison staff first learned of Anderson's misconduct on January 12, 2010, but they did not give Anderson a copy of the report until thirty-one days later on February 11, 2010.[37] Anderson argues that this delay not only violated the BOP policy, but also violated his rights under the Due Process and Equal Protection Clauses.

"[A] prison official's failure to follow the prison's own policies, procedures or regulations does not constitute a violation of due process, if constitutional minima are nevertheless met."[38] In this case, the constitutional minima included "(1) written notice of the

---

[35] *Little*, 37 F.3d at 1075.

[36] *See also* 28 C.F.R. § 541.5(a) ("The discipline process starts when staff witness or reasonably believe that you committed a prohibited act. A staff member will issue you an incident report describing the incident and the prohibited act(s) you are charged with committing. You will ordinarily receive the incident report within 24 hours of staff becoming aware of your involvement in the incident.").

[37] Resp't's Mot. to Dismiss Ex. B, at 1; Pet'r's Pet. Ex. A, at 1.

[38] *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996); *see also Staples v. Keffer*, 419 F. App'x. 461, 462 (5th Cir. 2011) (per curiam) (unpub. op.) ("[A]ny failure by prison officials to comply with their own regulations 'does not establish a violation of due process, because constitutional minima may nevertheless have been met.'") (quoting *Jackson v. Cain*, 864 F.2d 1235, 1251–52 (5th Cir. 1989)); *Hernandez v. Estelle*, 788 F.2d 1154, 1158 (5th Cir. 1986) ("[T]he mere failure to give notice in time, but with complete and adequate due process procedures after the notice actually was given, cannot be taken as establishing a violation of the United States Constitution.").

charges *at least 24 hours prior to the proceedings*, (2) an opportunity to call witnesses and present evidence in [his] defense when permitting [him] to do so [would] not be unduly hazardous to institutional safety or correctional goals, and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action."[39] Even in the context of a criminal prosecution where defendants are entitled to greater due process protection, delay in bringing charges does not violate due process unless (1) the Government intentionally brought about the delay for the purpose of gaining some tactical advantage over the defendant or some other bad-faith purpose, and (2) the delay prejudiced the accused.[40] Anderson has not established either of these, and therefore his due process claim fails.

Further, the Equal Protection Clause merely directs that persons similarly situated should be treated alike.[41] To succeed on an equal protection claim, a petitioner must prove purposeful discrimination resulting in a discriminatory effect among similarly situated persons.[42] At Anderson's disciplinary hearing, the DOH explained that the staff delayed the report in order to further investigate "elements of Codes 204(A) and 217(A)."[43] Moreover, when questioned, Anderson indicated to the DHO that the delay did not hinder "his ability to prepare a defense."[44]

---

[39] *Walls v. Chapman*, 408 F. App'x 858, 859 (5th Cir. 2011) (per curiam) (unpub. op.) (emphasis added) (citing *Wolff*, 418 U.S. at 563–66).

[40] *United States v. Crouch*, 84 F.3d 1497, 1514 (5th Cir. 1996) (en banc).

[41] *Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir. 1999) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)).

[42] *Freeman v. Tex. Dep't of Crim. Justice*, 369 F.3d 854, 862 (5th Cir. 2004) (citing *Muhammad v. Lynaugh*, 966 F.2d 901, 903 (5th Cir. 1992)).

[43] Resp't's Mot. to Dismiss Ex. C, at 4; Pet'r's Pet. Ex. B, at 3.

[44] *Id.*

Anderson offers no specific evidence that the BOP staff engaged in purposeful discrimination or treated him differently from any other prisoner in his circumstances. His vague and conclusory allegation is, therefore, insufficient to raise an equal protection claim.[45]

In his response to the motion to dismiss [ECF No. 6], Anderson complains that Bragg failed to address his equal protection claim concerning the delay in receiving the incident report. In his reply [ECF No. 7], Bragg correctly maintains that Anderson's claim fails "because the Supreme Court . . . 'requires only that the inmate receive written notice of the charge at least 24 hours before the hearing, not within 24 hours from the time the prison staff become aware of the incident.'"[46]

B.   *Fifth Amendment Warnings*

Anderson also maintains that the investigator never "advised [him] of his Fifth Amendment protections" articulated in *Miranda*.[47] As a result, he claims that he "gave incriminating admissions during an interview."[48] These admissions, he argues, "cannot be considered in a determination of guilt."[49]

Anderson concedes that "[p]rison disciplinary hearings are not part of a criminal prosecution."[50] The Court notes that the Supreme "Court has recognized that lawful conviction

---

[45] *Pedraza v. Meyer*, 919 F.2d 317, 318 n.1 (5th Cir. 1990).

[46] Resp't's Reply 1 (quoting *August v. Payne*, 2002 WL 1973866, at *2 n.2 (5th Cir. 2002) (per curiam) (unpub. op.)).

[47] Pet'r's Pet. 6.

[48] *Id.*

[49] *Id.*

[50] *Id.* at 7; *Wolff*, 418 U.S. at 556.

and incarceration necessarily place limitations on the exercise of a defendant's privilege against self-incrimination."[51] Moreover, "[t]he [Supreme] Court has never held . . . that the requirements of [*Miranda*] must be met to render pretrial statements admissible in other than criminal cases."[52] As the Supreme Court explained, "[d]isciplinary proceedings in . . . prisons . . . involve the correctional process and important state interests other than conviction for crime."[53]

In his response to the motion to dismiss, Anderson asserts "[t]he heart of Petitioner's argument is that he was not offered immunity before being compelled to give testimonial evidence, not that he had a right to *Miranda* warnings."[54] The Supreme Court has also explained that "if inmates are compelled in those proceedings to furnish testimonial evidence *that might incriminate them in later criminal proceedings*, they must be offered 'whatever immunity is required to supplant the privilege' and may not be required to 'waive such immunity.'"[55]

In this case, however, there is no evidence that the investigator or the prison staff planned to initiate criminal charges against Anderson for his misconduct. Thus, they were not required to give him either *Miranda* warnings or offer him immunity from criminal prosecution. Accordingly, Anderson is not entitled to relief on this claim.

C.   *Amendment of the Incident Report*

Anderson declares that he received "a new incident report . . . just thirty minutes prior to

---

[51] *McKune v. Lile*, 536 U.S. 24, 38 (2002).

[52] *Baxter v. Palmigiano*, 425 U.S. 308, 315 (1976).

[53] *Id.* at 319.

[54] Pet'r's Resp. 2 (citing *Baxter*).

[55] *Baxter*, 425 U.S. at 316 (emphasis added) (quoting *Lefkowitz v. Turley*, 414 U.S. 70, 85 (1973)).

the DHO hearing."[56] He maintains that because "the incident report is to be delivered to the inmate at a minimum of at least 24 hours prior to the hearing . . . [t]he DHO acted arbitrarily an[d] capriciously and clearly abused her discretion."[57]

The record shows that prison staff delivered a copy of the incident report to Anderson on February 11, 2010.[58] It further shows that Anderson appeared before the DHO for a hearing on March 10, 2010.[59] Anderson's copy of the incident report indicates that someone made three pen-and-ink corrections to the report on the day of the hearing. The first correction changed the phrase "sigging at a table" to "sitting at a table."[60] The second concerned the number of postage stamps. The original report claimed "staff searched your property and found 6200 United States Postage stamps. . . . 200 stamps were concealed inside your laundry soap box and 4200 stamps were concealed inside legal paperwork."[61] The correction changed "200 stamps" to "2000 stamps."[62] The third correction changed "[t]he last not is an inmate attempting to get permission from ANDERSON to force inmates to pay" to "[t]he last note is an inmate attempting to get permission from ANDERSON to force inmates to pay."[63]

---

[56] Pet'r's Pet. 7.

[57] *Id.* at 8.

[58] Resp't's Mot. to Dismiss Ex. B, at 1; Pet'r's Pet. Ex. A, at 1.

[59] Resp't's Mot. to Dismiss Ex. C, at 1; Pet'r's Pet. Ex. B, at 1.

[60] Pet'r's Pet. Ex. A, at 1.

[61] *Id.*

[62] *Id.*

[63] *Id.* Ex. A, at 2.

The minor changes to the report did not in any way hinder Anderson's ability to prepare a defense or otherwise prejudice his cause.[64] Before the Court will issue a writ of habeas corpus, "the petitioner must demonstrate that he has suffered some prejudice as a result of the alleged constitutional violation."[65] Anderson has not shown prejudice, and he is not entitled to relief on this claim.

### D. Minimal Procedural Requirements

The record clearly demonstrates that prison authorities afforded Anderson the constitutional minima to satisfy due process. They provided Anderson with (1) a written notice of the charges against him at least twenty-four hours before the proceedings,[66] (2) an opportunity to call witnesses and present evidence in his defense,[67] and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.[68] Moreover, Anderson's statement that his mother sent money to various inmates to cover the house bet and the evidence that his mother deposited money in inmate trust accounts provides some evidence of his guilt.[69] The DHO clearly relied upon Anderson's statement and the inmate trust account

---

[64] *Hallmark v. Johnson*, 118 F.3d 1073, 1080 (5th Cir. 1997).

[65] *Simpson v. Ortiz*, 995 F.2d 606, 609 (5th Cir. 1993) (quoting *Brown v. Collins*, 937 F.2d 175, 182 (5th Cir. 1991)).

[66] *See* Resp't's Mot. to Dismiss Ex. B, at 1 (showing an employee delivered a copy of the report to Anderson at 4:57 p.m on February 11, 2010); Pet'r's Pet. Ex. A, at 1; Resp't's Mot. to Dismiss Ex. C, at 1(showing the DHO held the hearing on March 10, 2010); Pet'r's Pet. Ex. B, at 1.

[67] Resp't's Mot. to Dismiss Ex. B, at 9, Ex. C, at 1–5; Pet'r's Pet. Ex. B, at 1–5.

[68] Resp't's Mot. to Dismiss Ex. C, at 3–5; Pet'r's Pet. Ex. B, at 3–5.

[69] *Hudson v. Johnson*, 242 F.3d 534, 536–37 (5th Cir. 2001).

records.[70] Additionally, the DHO considered, but found no merit in, Anderson's defense. Anderson cannot establish a due process claim. Moreover, Anderson offers no specific evidence that the BOP staff engaged in purposeful discrimination or treated him differently from any other prisoner in his circumstances. Thus, his vague and conclusory allegation is insufficient to raise an equal protection claim.[71] Accordingly, Bragg is entitled to summary judgment.

## CONCLUSION AND ORDERS

After carefully examining Anderson's petition, Bragg's motion, and Anderson's response, the Court concludes that there is no dispute as to any material fact. Anderson cannot establish that the BOP deprived him of some right secured by the Constitution or laws of the United States. Thus, he is not entitled to federal habeas corpus relief, and Bragg is entitled to summary judgment. Therefore, the Court enters the following orders:

1. The Court **CONSTRUES** Respondent M. Travis Bragg's motion to dismiss [ECF No. 5] as a motion for summary judgment.

2. The Court **GRANTS** Respondent M. Travis Bragg's motion for summary judgment.

3. The Court **DENIES** Petitioner Jason Anderson's *pro se* petition for habeas corpus under 28 U.S.C. § 2241 [ECF No. 1] and **DISMISSES** his cause **WITH PREJUDICE.**

---

[70] Resp't's Mot. to Dismiss Ex. C, at 3–5; Pet'r's Pet. Ex. B, at 4.

[71] *Pedraza*, 919 F.2d at 318 n. 1.

4. The Court additionally **DENIES** all pending motions in this cause, if any, as **MOOT**.

**SO ORDERED.**

**SIGNED** this _19th_ day of **September, 2011.**

_____
PHILIP R. MARTINEZ
UNITED STATES DISTRICT JUDGE